JOON H. KIM
Acting United States Attorney for the
Southern District of New York
By: JEAN-DAVID BARNEA
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2679
Email: Jean-David.Barnea@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VERIZON NEW YORK, INC., VERIZON NETWORK INTEGRATION CORP., and VERIZON SELECT SERVICES, INC.,<br><br>Defendants. | 17 Civ. ____ (___)<br><br>**COMPLAINT OF THE UNITED STATES** |

The United States of America (the "United States" or the "Government"), by its attorney Joon H. Kim, Acting United States Attorney for the Southern District of New York, alleges for its Complaint as follows:

**PRELIMINARY STATEMENT**

1. The Government brings this civil fraud Complaint seeking damages and penalties against Verizon New York, Inc. ("VNY"), Verizon Network Integration Corp. ("VNIC"), and Verizon Select Services, Inc. ("VSS," and collectively, "Verizon" or "Defendants") under the False Claims Act, 31 U.S.C. § 3729 *et seq.* (the "FCA"), and, in the alternative, under the common law for unjust enrichment and payment by mistake of fact. In 2006, Verizon submitted a false claim for federal payment by seeking a reimbursement pursuant to the Federal

Communication Commission's ("FCC") E-Rate program. E-Rate is a federal program that offers subsidies to companies that provide discounted telephone, internet, and cabling services to eligible schools and libraries.

2. More specifically, Verizon knowingly, with deliberate ignorance or reckless disregard for the truth, submitted a monthly invoice to the FCC in September 2006 for data services provided to the New York City Department of Education ("NYC DOE") that contained general consultant charges unrelated to data or cabling work. Verizon was prohibited from billing NYC DOE for these consultant charges because Verizon's contract with NYC DOE only included consultants who were working on data or cabling as part of the scope of work. Verizon did not identify the non-billable consultant charges on its invoices to the FCC.

3. By submitting a false monthly remittance request to the FCC that included general consulting charges that were not actually allowed under its contract with NYC DOE, Verizon obtained federal funds to which it was not entitled, thereby violating the FCA and the common law.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the Government's FCA claims pursuant to 31 U.S.C. § 3730(a) and 28 U.S.C. §§ 1331 and 1345, and over the Government's common law claims pursuant to 28 U.S.C. § 1345.

5. This Court may exercise personal jurisdiction over Defendants, and venue is proper in this District pursuant to 31 U.S.C. § 3732(a) as well as 28 U.S.C. § 1391(b) because VNY is resident in and transacts business in this District and most of the acts giving rise to the claims occurred in this District.

## PARTIES

6. Plaintiff is the United States of America. The United States brings this action on behalf of the FCC. As discussed in more detail below, through the E-Rate program, the Government provides reimbursement to providers of internet access and telecommunications carriers for services they provide to eligible schools and libraries that purchase eligible services.

7. Defendant VNY is a New York corporation with its principal place of business in Manhattan. VNY provides wire line, fiber, and wireless telecommunication services and exchange access services.

8. Defendant VNIC is a Delaware corporation with its principal place of business in Fort Washington, Pennsylvania. VNIC operates as a subsidiary of Verizon Communications Inc. VNIC provides cabling construction services in New York.

9. Defendant VSS is a Delaware corporation with its principal place of business in Ashburn, Virginia. VSS operates as a subsidiary of Verizon Communications Inc.

## THE FALSE CLAIMS ACT

10. The FCA reflects Congress's objective to "enhance the Government's ability to recover losses as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (1986).

11. As relevant here, the FCA establishes liability for treble damages to the United States for an individual or entity that, *inter alia*:

   i. "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A); or

   ii. "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3729(a)(1)(B).

12.     "Knowing," within the meaning of the FCA, is defined to include reckless disregard and deliberate indifference. In addition to treble damages, the FCA also provides for assessment of a civil penalty for each violation or each false claim.

## FACTUAL ALLEGATIONS

### I.     The E-Rate Program

13.     The E-Rate program was created in the Telecommunications Act of 1996 to provide funding to enable schools and libraries to have affordable access to the Internet and other modern telecommunications services. *See* 47 U.S.C. § 254. The E-Rate program is operated under the auspices of the FCC. Under this program, the FCC reimburses providers of Internet access and telecommunications services for services that they provide to schools and libraries.

14.     The E-Rate program is funded by the Universal Service Fund ("USF"), which consists of statutorily mandated contributions from telecommunications companies. 47 C.F.R. § 54.706.

15.     The FCC utilizes the Universal Services Administrative Company ("USAC"), a not-for-profit corporation incorporated in Delaware, to help administer the E-Rate program.

16.     A school that wishes to obtain E-Rate funds is required to apply to USAC. The school first submits to USAC a FCC Form 470 (Description of Services Requested and Certification), describing the telecommunications services sought. 47 C.F.R. § 54.504(b). The school must post its Form 470 publicly for at least 28 days before selecting the contractor (known as a "service provider") that will provide the requested goods and services. *Id.* § 54.504(b)(4).

4

17. Upon signing a contract for eligible services, the school applies for E-Rate funding by submitting to USAC FCC Form 471 (Services Ordered and Certification), detailing the goods and services for which the school has contracted. 47 C.F.R. § 54.504(c).

18. FCC Form 471 asks applicants to certify that "the entities eligible for support that I am representing have complied with all applicable state and local laws regarding procurement of services for which support is being sought."

19. FCC Form 471 also asks applicants to certify that "the entity(ies) I represent has complied with all program rules and I acknowledge that failure to do so may result in denial of discount funding and/or cancellation of funding commitments."

20. USAC reviews the Form 471 application, requests any additional information it needs, and issues a Funding Commitment Decision Letter, which specifies the amount of E-Rate funding that is approved for each item in the application. Only equipment, services and supplies approved by USAC are eligible for E-Rate funding.

21. E-Rate funding can cover between 20 to 90 percent of the contract price (referred to as the discounted portion of the cost), calculated based on the formula discussed in 47 C.F.R. § 54.505(b). The school is required to fund the remaining portion of the contract. In this case, NYC DOE paid approximately 20 percent of the contract price on E-Rate work.

22. Once the school certifies to USAC that the contracted-for goods and services have been, are planned to be, or are being provided by filing FCC Form 486 (Receipt of Service Confirmation), the service provider may submit invoices to USAC for payment.

23. Under the payment mechanism at issue herein, the service provider bills the school district for its co-payment, and submits claims for the remainder directly to USAC by way of an FCC Form 474, once the school district certifies that the work has been completed.

## II. Fraud in the NYC DOE E-Rate Program

24. The NYC DOE is the largest school district in the United States, serving approximately 1.1 million students in over 1,800 schools. Since 1998, when it started "Project Connect" to connect all of those schools to the Internet, NYC DOE has received approximately $1.3 billion in E-Rate program disbursements.

25. Verizon has participated in the E-Rate program since 1998. Verizon provided certain services to the NYC DOE in 2006, including as part of the NYC DOE's Project Connect. Verizon provided NYC DOE with both data and voice telecommunications services and structured cabling and integration services. Verizon used various subcontractors to complete the structured cabling and integration work.

26. In May 2006, the Office of the Special Commissioner of Investigation for the New York City School District ("SCI") began an investigation of allegations that Willard "Ross" Lanham ("Lanham"), a NYC DOE consultant who served as the project manager for Project Connect for NYC DOE, was receiving illegal kickbacks.

27. In April 2011, SCI issued a report (the "SCI Report") concluding that Lanham had orchestrated a massive fraud from 2002 to 2008. According to the SCI Report, Lanham created a subcontracting scheme through which he billed millions of dollars to the NYC DOE for consultants he employed through a company (Lanham Enterprises) that he owned, thereby misappropriating money from NYC DOE, without NYC DOE's knowledge or agreement, by profiting from the markup on the consultants' time.

28. The SCI Report concluded that Lanham was able to accomplish his scheme and conceal the employment of the consultants by using pass-through entities, including vendors that provided services for NYC DOE, such as Verizon.

29. The NYC DOE had previously designated Lanham as its "Single Point of Contact" to handle coordination and facilitation of its contracts, including with Verizon. Among other things, Lanham directed Verizon to utilize his preferred subcontractor for cabling work (one that had agreed to pass-through Lanham's invoices to Verizon). The SCI Report described one instance in 2006 when Lanham told Verizon that he would steer a major cabling and integration initiative elsewhere unless Verizon continued to use Lanham's preferred subcontractor (telling a Verizon employee "I want you to use [his preferred subcontractor], and if you don't use them for the cabling integration jobs then I'm giving it to IBM"). Verizon complied with Lanham's request and was awarded the project.

30. At Lanham's direction, Verizon processed invoices ultimately submitted to NYC DOE that contained consultant charges with Verizon's "standard" mark-up applied to them. Pursuant to Lanham's instructions, rather than identifying a particular school associated with the work, Verizon agreed that the consultant charges would be referred to on the invoice merely as "various," or "multiple" or as an "EVPL CKT INSTALL CHARGE" [Ethernet Virtual Private Line Circuit Install Charge], as opposed to identifying them as consultant charges. One of the invoices including consultant charges was ultimately submitted to USAC in September 2006.

31. When a Verizon project manager questioned Lanham about the propriety of the consultant charges, Lanham advised the project manager that he was aware of them, knew what they were, that the consultants were working on the cabling projects, and that they were proper.

32. Verizon's employees who were aware of the consultant charges did not raise questions about the payments with any NYC DOE employee other than Lanham until 2008.

33. Verizon acted knowingly, with deliberate ignorance or reckless disregard for the truth, in submitting the consultant charges at issue to NYC DOE and, ultimately, USAC.

34. The Lanham consultants were not, in fact, working on E-Rate projects, despite being listed on E-Rate invoices.

35. Verizon invoiced, and USAC mistakenly paid, $114,544.73 to Verizon for Lanham's undisclosed consultants for the September 2006 invoice.

36. Lanham left the NYC DOE in late 2008.

37. After the SCI Report was released in 2011, Lanham was indicted by a grand jury in this District for converting federal program money to his own use, in violation of 18 U.S.C. § 666(a)(1)(A), and three counts of mail fraud, in violation of 18 U.S.C. § 1341. This conviction was affirmed on appeal, with the Second Circuit finding that the Government had proven that Lanham had "perpetrated an elaborate scheme between 2004 and 2008 in which he arranged for the substantial and unapproved overbilling of the United States Department of Education for the services of employees or consultants he oversaw through his business, Lanham Enterprises." *United States v. Lanham*, 541 F. App'x 34, 35-36 (2d Cir. 2013).

### III. False Claims and Certifications of Compliance

38. In 2006, Verizon submitted one FCC Form 474 that sought payment for the ineligible consultants.

39. This Form 474 certification submitted by Verizon was false because Verizon knowingly, with deliberate ignorance or reckless disregard for the truth, included false statements with its monthly remittance requests.

40. In 2006, NYC DOE filed Form 471 with USAC after selecting Verizon as its service provider. This form asked applicants to certify that "the entity(ies) I represent has complied with all program rules and I acknowledge that failure to do so may result in denial of discount funding and/or cancellation of funding commitments."

41. This Form 471 was false because, among other things, Verizon was not in compliance with E-Rate rules.

42. These false representations were material to the FCC's to decision to approve Verizon's requests for reimbursement from the E-Rate program.

## FIRST CLAIM

### Violations of the False Claims Act:
### Presenting False Claims for Payment
### (31 U.S.C. § 3729(a)(1)(A))

43. The United States incorporates by reference each of the preceding paragraphs as if fully set forth herein.

44. The United States seeks relief against Defendants under 31 U.S.C. § 3729(a)(1)(A).

45. Through the acts set forth above, Defendants knowingly, with deliberate ignorance or reckless disregard for the truth, presented, or caused to be presented, false claims to USAC, an agent of the United States, by submitting in September 2006 a monthly reimbursement request and certification (*i.e.*, Form 474) pursuant to the E-Rate program.

46. USAC was not aware of the falsity of the claim submitted, and would not have disbursed funds to Verizon under the E-Rate program if it had known that Verizon's monthly reimbursement request and certification was false.

47. By reason of this false claim, the Government has sustained damages in a substantial amount to be determined at trial, and is entitled to treble damages plus a civil penalty for each violation.

## SECOND CLAIM

**Violations of the False Claims Act: Use of False Statements**
**(31 U.S.C. § 3729(a)(1)(B))**

48. The United States incorporates by reference each of the preceding paragraphs as if fully set forth herein.

49. The United States seeks relief against Defendants under 31 U.S.C. § 3729(a)(1)(B).

50. Through the acts set forth above, Defendants knowingly, with deliberate ignorance or reckless disregard for the truth, made, used, or caused to be made and used, false records and statements material to false claims by submitting a monthly reimbursement request and certification (*i.e.*, Form 474), and by causing NYC DOE to submit a false annual certification (*i.e.*, Form 471) to USAC and the FCC.

51. USAC was not aware of the falsity of those records and statements, and would not have disbursed funds to Verizon under the E-Rate program if it had known that the monthly reimbursement request and certification and the annual certification were false and that Verizon did not comply with applicable FCC rules and regulations.

52. By reason of these false records and statements, the Government has sustained damages in a substantial amount to be determined at trial, and is entitled to treble damages plus a civil penalty for each violation.

## THIRD CLAIM

**Payment by Mistake of Fact**

53. The United States incorporates by reference each of the preceding paragraphs as if fully set forth herein.

54. The Government seeks relief against Defendants to recover monies paid under mistake of fact.

55. USAC, an agent of the United States, disbursed funds to Verizon pursuant to the E-Rate program based on the mistaken and erroneous belief that Verizon was acting in compliance with FCC rules and regulations and that Verizon was seeking payments only for eligible E-Rate services. These erroneous beliefs were material to USAC's decision to make these payments.

56. By reason of the foregoing, the Government has sustained damages in a substantial amount to be determined at trial.

### FOURTH CLAIM

#### Unjust Enrichment

57. The United States incorporates by reference each of the preceding paragraphs as if fully set forth herein.

58. Through the acts set forth above, Verizon has received payments pursuant to the E-Rate program to which it was not entitled and therefore was unjustly enriched. The circumstances of these payments are such that, in equity and good conscience, Verizon should not retain those payments, the amount of which is to be determined at trial.

**WHEREFORE**, the United States respectfully requests judgment to be entered in its favor against Defendants as follows:

    a. On the First and Second Claims (FCA violations), for a sum equal to treble damages and civil penalties to the maximum amount allowed by law;

    b. On the Third Claim (Payment by Mistake of Fact), a sum equal to the damages to be determined at trial, along with costs and interest;

  c. On the Fourth Claim (Unjust Enrichment), a sum equal to the damages to be determined at trial, along with costs and interest; and

  d. Granting the United States such further relief as the Court may deem proper.

Dated: October 16, 2017
   New York, New York

            JOON H. KIM
            Acting United States Attorney for the
            Southern District of New York

By: _____
   JEAN-DAVID BARNEA
   Assistant United States Attorney
   86 Chambers Street, Third Floor
   New York, New York 10007
   Telephone: (212) 637-2679
   Email: Jean-David.Barnea@usdoj.gov


   CHAD A. READLER
   Acting Assistant Attorney General
   for the Civil Division

By: _____
   MICHAEL D. GRANSTON
   PATRICIA L. HANOWER
   JENNIFER CHORPENING
   Attorneys
   601 D. St., NW, Suite 9540
   Washington, D.C. 20004
   Telephone: (202) 514-8112
   Email: Jennifer.Chorpening@usdoj.gov

*Attorneys for the United States of America*